UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

JOCELYN COLON,

        Plaintiff,

    v.

HY SUPPLIES, INC.,

        Defendant.

No. 22 CV 5915

Judge Manish S. Shah

**MEMORANDUM OPINION AND ORDER**

Plaintiff Jocelyn Colon is legally blind. Defendant HY Supplies, Inc. sells salon and healthcare supplies through its website. Colon alleges that she tried to use the company's website but was unable to understand its content because the website wasn't configured properly for blind users. Colon seeks injunctive and declaratory relief for an alleged violation of the Americans with Disabilities Act. HY now moves to dismiss for lack of standing, failure to state a claim, and lack of subject matter jurisdiction. For the reasons set forth below, the motion is denied.

## I.     Background

To access visual content on the internet, plaintiff Jocelyn Colon uses a screen reader, which reads text aloud to her. [1] ¶¶ 8, 12.[1] She uses an iPhone with a screen-reader application as well as her Microsoft Windows 10 laptop. [1] ¶ 12; [22] at 5.[2]

HY is an online retailer of salon and healthcare supplies. [1] ¶ 13. Customers may purchase HY's products and access other brand-related content and services at its website. [1] ¶ 14. Customers may also use HY's website to contact customer services by phone, instant messenger, and email; sign up to receive product updates and special promotions; and review legal notices, such as HY's Privacy Policy and Terms and Conditions. [1] ¶ 15.

Colon alleges that she attempted to access HY's website from her home to shop for diabetic foot cream, but encountered barriers because HY's website is allegedly not compatible with screen access programs. [1] ¶¶ 21, 27. Colon alleges three examples of accessibility barriers to the website. [1] ¶ 27. First, a "10% off" promotional banner displayed at the top of the homepage, which included a coupon code, was inaccessible to screen-reader users as the screen reader read the banner as saying, "5 list start." *Id.* Second, the "Top Trending" carousel on the homepage displayed several popular products, under which there were several buttons ("Add to

---

[1] Bracketed numbers refer to entries on the district court docket. Referenced page numbers are taken from the CM/ECF header placed at the top of filings. When a document has numbered paragraphs, I cite to the paragraph, for example [1] ¶ 1. The facts are taken from Colon's complaint, [1].

[2] The complaint alleges that Colon uses the screen-reader application JAWS with her iPhone. [1] ¶ 12. Colon's opposition states this was a typographical error and that Colon uses VoiceOver with her iPhone. [22] at 5.

Compare," "Add to Wishlist," "Add to Cart"). *Id.* None of these buttons received focus and were not announced by the screen-reader. *Id.* Third, when updating the quantity of a product and adding it to the cart on the website, an error message was displayed, but the screen reader announced "invalid data" with no other information. *Id.*

Colon alleges that these barriers denied her full and equal access to the services on HY's website and deter her from attempting to use the website to buy HY's goods and services. [1] ¶ 28. Colon also alleges that she would like to, and intends to, attempt to access the website in the future. *Id.*

Colon seeks declaratory and prospective injunctive relief requiring HY to improve and maintain accessibility of its website. [1] ¶ 17; [1] at 13–14.

## II.  Standing

HY argues that Colon does not have standing to bring this suit. [19] at 11. The Constitution limits federal-court jurisdiction to controversies brought by plaintiffs who "(1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision." *Spokeo, Inc. v. Robins*, 578 U.S. 330, 338 (2016).

### A.  Injury in Fact

Plaintiffs must allege an injury in fact that is "concrete and particularized" and "actual or imminent, not conjectural or hypothetical." *Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc.*, 528 U.S. 167, 180 (2000). Colon alleges multiple injuries in fact from her attempt to access HY's website. Colon encountered barriers that denied her full and equal access to HY's online goods, content, and services. [1] ¶ 21. She was unable to purchase diabetic foot cream from HY's website and access a

10% off promotion because of these barriers. [1] ¶¶ 21, 27. *See Lujan v. Defs. of Wildlife*, 504 U.S. 555, 561 (1992) ("At the pleading stage, general factual allegations of injury resulting from the defendant's conduct may suffice.").

Because she seeks prospective injunctive relief, Colon must also allege a "real and immediate" threat of future ADA violations. *See Scherr v. Marriott Int'l, Inc.*, 703 F.3d 1069, 1074 (7th Cir. 2013). "Past exposure to illegal conduct does not in itself show a present case or controversy regarding injunctive relief ... if unaccompanied by any continuing, present adverse effects." *Lujan*, 504 U.S. at 564 (citation omitted). So, on top of a past injury, a plaintiff must also allege that the discrimination will continue and injure her in the future. *Scherr*, 703 F.3d at 1074. This threat of future injury can be shown by an intent to return to or use the public accommodation, *id.*, but it can also be shown by establishing that the plaintiff is reasonably deterred from the accommodation because of the discrimination. *See Scherr v. Marriot Int'l, Inc.*, 833 F.Supp.2d 945, 951 (N.D. Ill. 2011), *aff'd*, 703 F.3d 1069 (7th Cir. 2013). Colon alleges both that she intends to return to HY's website, and that she is deterred[3] from doing so. [1] ¶ 28.

HY argues that Colon's desire and intent to access its website in the future negates any claim of her being "deterred" from going back to the site. [19] at 13. But Colon can't follow through on her desire or intent because of the alleged barriers to

---

[3] A plaintiff pleading a deterrence injury must also establish that she would have been subject to the defendant's unlawful conduct. *Laidlaw*, 528 U.S. at 184; s*ee Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 419 (2013). Colon has plausibly alleged that if she were not deterred and actually visited HY's website she would not be able to fully access HY's goods and services because of the website's incompatibility with her screen reader. [1] ¶¶ 21, 29.

access—she is deterred from even trying to return. HY also argues that Colon must allege a concrete plan of when she intends to try to use its website. [19] at 14. Colon does not need to allege such detail. Concrete intentions to return to a location of injury are not required to establish standing. *See Laidlaw*, 528 U.S. at 184 (holding that plaintiffs' "conditional statements—that they would use the nearby North Tyger River for recreation if [defendant] were not discharging pollutants into it—[cannot] be equated with the speculative 'some day intentions' to visit endangered species halfway around the world that we held insufficient to show injury in fact.").

At this stage, Colon's allegations are enough to establish a "real and immediate" threat of future ADA violations. *See Scherr*, 703 F.3d at 1074. Colon has adequately alleged an injury in fact.

## B.   Causation and Redressability

Colon must also allege that her injuries are causally connected to HY's actions and that a decision in her favor is likely to redress her injuries. Causation requires plaintiffs' injuries to be "fairly traceable to the challenged action of the defendant, and not the result of the independent action of some third party before the court," *Lujan*, 504 U.S. at 560 (citations and alterations removed), but the defendant's actions do not have to be "the very last step in the chain of causation." *Bennett v. Spear*, 520 U.S. 154, 169 (1997).

Colon alleges that she was unable to purchase HY's product and to access a discount, and that she is now also deterred from using HY's website because of accessibility barriers. [1] ¶¶ 21, 27–28. I accept Colon's allegations as true at this stage, *see Lujan*, 504 U.S. at 561, and therefore, she has adequately alleged her

injuries were causally connected to HY's failure to make its website accessible to screen reader users.

Colon's allegations also support an inference that a decision in her favor is likely to redress her injuries. Redressability "examines the causal connection between the alleged injury and the judicial relief requested." *Lac Du Flambeau Band of Lake Superior Chippewa Indians v. Norton*, 422 F.3d 490, 501 (7th Cir. 2005) (quotation omitted). On a motion to dismiss, a plaintiff need only plead "that there is a 'substantial likelihood' that the relief requested will redress the injury claimed." *Duke Power Co. v. Carolina Envtl. Study Group, Inc.*, 438 U.S. 59, 75 n. 20 (1978). Colon's requested relief would make HY's website compatible with screen readers. [1] ¶¶ 17–18. Colon would have equal access to HY's goods and services, be able to make purchases, and would no longer be deterred from using the website. *See* [1] ¶ 29.

Colon has adequately shown she has standing, therefore, HY's motion to dismiss on these grounds is denied.

## III. Failure to State a Claim

When reviewing a 12(b)(6) motion to dismiss, a court accepts all well-pled allegations as true and draws all reasonable inferences in favor of the plaintiff. *Gociman v. Loyola Univ. of Chi.*, 41 F.4th 873, 878 (7th Cir. 2022). "To survive a motion to dismiss, a plaintiff need allege 'only enough facts to state a claim to relief that is plausible on its face.'" *Barwin v. Vil. of Oak Park*, 54 F.4th 443, 453 (7th Cir. 2022) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).

Colon brings her claim under Title III of the ADA, which provides that "[n]o individual shall be discriminated against on the basis of disability in the full and

equal enjoyment of the goods, services, facilities, advantage, or accommodations of any place of public accommodation." 42 U.S.C. § 12182(a). This non-discrimination provision applies to "any person who owns, leases (or leases to), or operates a place of public accommodation." *Id.*

Title III defines "discrimination" as "a failure to take such steps as may be necessary to ensure that no individual with a disability is excluded, denied services, segregated or otherwise treated differently than other individuals because of the absence of auxiliary aids and services," unless the defendant can show that such accommodation "would fundamentally alter the nature of the good, service, facility, privilege, advantage, or accommodation being offered or would result in an undue burden." § 12182(b)(2)(A)(iii).

To successfully state a claim under Title III, Colon must allege that HY operates a "place of public accommodation," and that Colon was discriminated against because of her disability. *See Mohammed v. DuPage Legal Assistance Found.*, 781 F. App'x 551, 552 (7th Cir. 2019) (citing *A.H. by Holzmueller v. Ill. High Sch. Ass'n*, 881 F.3d 587, 592–93 (7th Cir. 2018)).

## A.   Place of Public Accommodation

"Public accommodation" is defined by a list of different kinds of entities, including sales establishments. 42 U.S.C. § 12181(7)(E). HY argues that it does not operate a place of public accommodation, and its argument depends on the assertion that such places must be real, physical spaces. [19] at 6.

The Courts of Appeal for the Third, Fifth, Sixth, and Ninth Circuits agree with HY that a place of public accommodation must be a physical space.[4] *See Magee v. Coca-Cola Refreshments USA, Inc.*, 833 F.3d 530, 534 (5th Cir. 2016), *cert. denied*, 583 U.S. 814 (2017); *Weyer v. Twentieth Century Fox Film Corp.*, 198 F.3d 1104, 1114–15 (9th Cir. 2000); *Ford v. Schering-Plough Corp.*, 145 F.3d 601, 613–14 (3d Cir. 1998); *Parker v. Metro. Life Ins. Co.*, 121 F.3d 1006, 1014 (6th Cir. 1997) (en banc). They reason that "[e]very term listed in § 12181(7) ... is a physical place open to public access." *Parker*, 121 F.3d at 1014. Applying the canon of *noscitur a sociis*—meaning, "[i]t is known from its associates"—these courts held that non-physical establishments or entities are not places of public accommodation within the meaning of Title III. *Id.*

The First Circuit, however, has concluded otherwise. *See Carparts Distribution Ctr., Inc. v. Auto. Wholesaler's Ass'n of New England, Inc.*, 37 F.3d 12, 19 (1st Cir. 1994). The court reasoned that the terms listed in § 12181(7) are not all only physical places—for example, a "travel service" can conduct its business by telephone or correspondence—and "[i]t would be irrational to conclude that persons who enter an office to purchase services are protected by the ADA, but persons who purchase the same services over the telephone or by mail are not." *Id.* The court noted that "[i]n drafting Title III, Congress intended that people with disabilities have equal access to the array of goods and services offered by private establishments and made

---

[4] The Eleventh Circuit held the same, but the case was later vacated on other grounds. *Gil v. Winn-Dixie Stores, Inc.*, 993 F.3d 1266, 1276–77 (11th Cir. 2021), *vacated by* 21 F.4th 775.

available to those who do not have disabilities." *Id.* The Second Circuit has cited *Carparts* approvingly, though it has not committed itself to the *Carparts* position. *Pallozzi v. Allstate Life Ins. Co.*, 198 F.3d 28, 32 (2d Cir. 1999).

The Seventh Circuit has twice suggested that it agrees with the First Circuit. In *Doe v. Mutual of Omaha Insurance Co.*, 179 F.3d 557, 559 (7th Cir. 1999), the court explained that § 12182's meaning is "that the owner or operator of a store, hotel, restaurant, dentist's office, travel agency, theater, Web site, or other facility (*whether in physical space or in electronic space*) that is open to the public cannot exclude disabled persons from entering the facility and, once in, from using the facility in the same way that the nondisabled do." (citing *Carparts*, 37 F.3d at 19) (emphasis added). The court treated the defendant insurance company as a place of public accommodation but reversed the lower court's judgment in favor of plaintiffs on other grounds. *Id.* at 558–59, 564.

In *Morgan v. Joint Administration Board*, 268 F.3d 456, 459 (7th Cir. 2001), the court said:

> The defendant asks us to interpret "public accommodation" literally, as denoting a physical site, such as a store or a hotel, but we have already rejected that interpretation. An insurance company can no more refuse to sell a policy to a disabled person over the Internet than a furniture store can refuse to sell furniture to a disabled person who enters the store. The site of the sale is irrelevant to Congress's goal of granting the disabled equal access to sellers of goods and services. What matters is that the good or service be offered to the public.

*Id.* (citations omitted). In doing so, the court cited to both *Doe* and *Carparts*, as well as the other circuits' conflicting decisions in *Weyer*, *Ford*, and *Parker*. *Id.* Ultimately,

however, the court held that the retirement plan at issue was not a public accommodation because it was not offered to the public. *Id.*

HY offers a "middle ground" between the circuits, suggesting that I distinguish between the "front-end" v. "back-end" of its website. [19] at 9. HY argues that its website forms two discrete "spaces": the "front-end" of the site, which HY compares to a catalog with information about products, and the "back-end," the shopping cart and order-processing portal. *Id.* According to HY, only the "back-end" of its website can be considered a public accommodation because that is where the transaction occurs, like a cashier's register—a point of sale. *Id.* In comparison, the "front-end" cannot be a place of public accommodation because even though it is visible to the public, it is a feature of the store, not the store itself, like a restaurant's menu. *Id.* HY argues that in order to have a claim, Colon must allege that something discriminatory is in the back-end of HY's website that prevents her from buying HY's goods or services. [19] at 11.

HY offers no binding case law to support this distinction, citing only to *Huzar v. Groupon, Inc.*, No. 17-cv-5383, 2018 WL 3619388 (N.D. Ill. July 30, 2018). [19] at 9–10. *Huzar* held that Groupon was not a place of public accommodation because it only sold hotel reservations and sports event tickets but did not operate the hotels and sports stadiums. 2018 WL 3619388 at *3. That is not the case here. HY is not selling reservations or tickets to other public accommodations but is operating a website to sell products.

Ultimately, if there is something discriminatory in the "front-end" of a website, a disabled user may be unable to make a purchase from the "back-end." Even accepting HY's characterization of the "front-end" of the website as a menu or catalog, an inaccessible menu or catalog can still prevent a disabled person from equal access to goods or services. *See* 28 C.F.R. § Part 36, App. C (explaining while a restaurant does not have to provide a menu in Braille, it must provide alternative effective communication to customers with vision disabilities). The front-end/back-end distinction does not provide a meaningful definition of a place of public accommodation.

HY similarly argues that, if I find its website to be a place of public accommodation, I should analyze which portions of HY's website fall under the ADA definition of a "place of public accommodation" as a facility "whose operations affect commerce." [25] at 4–5. HY argues that the portions of its website that are allegedly inaccessible do not affect commerce and therefore, the site is not a place of public accommodation. *Id.* The issue of whether an accessibility barrier affects commerce may affect the merits of Colon's claim. But even if I were to make this distinction, Colon's allegations, taken as true, demonstrate that the inaccessible portions of HY's website affected her ability to purchase a product, which affects commerce. *See* [1] ¶¶ 21, 27.

HY also argues, citing *303 Creative, LLC v. Elenis*, 600 U.S. 570 (2023), that its website contains expressive content that is protected under the First Amendment. [25] at 6. This argument undermines HY's other arguments that its website is only a

catalog of products and that HY is simply a broker of products. *See* [19] at 9–11; [25] at 2. In any event, *303 Creative* was limited to "public accommodations statute[s that] deny speakers the right to choose the content of their own messages." 600 U.S. at 592 (quotation omitted). On the current record, Colon is not asking that HY change the content of its website, but that HY make that content accessible. *See* [1] ¶ 27. Such changes would not implicate the forced-speech concerns raised in *303 Creative*.

None of HY's arguments persuade me to veer away from the Seventh Circuit's considered dicta that a place of public accommodation is not limited to physical sites. I am not bound to follow dicta. *See Cole Energy Dev. Co. v. Ingersoll-Rand Co.*, 8 F.3d 607, 609 (7th Cir. 1993). Nevertheless, it carries significant weight. *See Reich v. Cont'l Cas. Co.*, 33 F.3d 754, 757 (7th Cir. 1994) (considered dictum "provides the best, though not an infallible, guide to what the law is, and it will ordinarily be the duty of a lower court to be guided by it."). The court's *Morgan* dictum was not a passing thought, but rather an explicit rejection of HY's argument that a "public accommodation" must be a physical site, made while acknowledging the contrary holdings of other circuits. 268 F.3d at 459. So, I elect to follow it. A "place of public accommodation" does not have to be a physical space, and Colon has plausibly alleged that HY operates a place of public accommodation.

### B.   Discrimination because of Disability

Colon is legally blind, [1] ¶ 12, and therefore she is disabled within the meaning of the ADA. 42 U.S.C. § 12102(2)(A). Colon alleges that she was denied full and equal access to the services HY offers because HY's website is not properly formatted to allow blind users to access its digital content. [1] ¶ 9. She was unable to

purchase diabetic foot cream from HY's website and access a promotion because of these barriers. [1] ¶¶ 21, 27.

HY argues that Colon's claim should be dismissed because she misidentified which screen reader she uses in the complaint, she failed to adequately plead that HY's website caused the accessibility barriers, and she failed to use the alternative auxiliary aids that HY provided. [19] at 4–6; [25] at 12–14.

1. *Identity of Screen Reader*

Colon alleges that she "uses an iPhone with the screen-reader application JAWS as well as her Microsoft Windows 10 laptop." [1] ¶ 12. HY argues that JAWS is only compatible with Windows operating systems, not the iPhone. [19] at 4. Colon admits that this is an error in her complaint,[5] and that she uses her iPhone with the VoiceOver app, as well as her Microsoft Windows 10 laptop. [22] at 5 n. 1. Colon also notes that it is possible to run Windows applications on an iPhone through remote access tools. [22] at 9.

HY argues that this error is sufficiently material and an independent basis for dismissal. [19] at 4. According to HY, identification of which screen reader Colon used

---

[5] HY argues that Colon is a serial litigant who has, through the same counsel, filed 11 cookie-cutter ADA website accessibility lawsuits that all contain the same error. [25] at 9. HY argues that because Colon has taken this position in other lawsuits, and induced settlement in her favor, she is judicially estopped from "amending" her "mistake" in this case. *Id.* HY cites to *Baughman v. Disney World Co.*, 685 F.3d 1131, 1133–34 (9th Cir. 2012), which judicially estopped a plaintiff from asserting that she never used or doesn't need a wheelchair when she claimed the exact opposite in three prior lawsuits. *Id.*; *see also Commonwealth Ins. Co. v. Titan Tire Co.*, 398 F.3d 879, 887 (7th Cir. 2004) (holding "[j]udicial estoppel prevents a party that has taken one position in litigating a particular set of facts and prevailed under that position from later reversing its position when it is to its advantage to do so."). Colon's inconsistency here is not so egregious—Colon says she named the wrong screen reader, but she never disclaimed using one at all.

when she attempted to purchase foot cream is an important factual detail because different screen readers have different functionalities and compatibilities. [19] at 5. HY argues that Colon's claim fails because she did not claim that she attempted to use more than one screen reader to access HY's website, or that she made multiple attempts on different dates with the same or different readers. *Id.* HY provides no authority requiring a plaintiff to allege that she tried several screen reader applications to ensure that a defendant's website was inaccessible across all screen readers to bring a Title III claim.

The identity of Colon's screen reader may be material at a later stage of the proceedings when assessing whether HY's website was accessible, but on a motion to dismiss, it does not affect the sufficiency of Colon's complaint. Taking Colon's allegations as true, the website was incompatible with her screen reader, whichever one she used, and therefore Colon was deprived of equal access to HY's goods and services, which is discrimination within the meaning of the ADA.

### 2. Causation

HY argues that Colon's claim fails because she did not plausibly plead that the accessibility barriers are attributable to HY's website as opposed to Colon's own "user error." [19] at 5. Because Colon did not make allegations of her training, experience, or ability to use her screen reader, HY argues that it is reasonable to infer that Colon's own mistake prevented her from accessing HY's website. *Id.*

But at this stage, I must draw all reasonable inferences in Colon's favor. *Gociman*, 41 F.4th at 878. It is reasonable to infer that Colon, who has been blind since she was sixteen, [1] ¶ 12, was fully capable of using a screen reader and

14

troubleshooting any issues she encountered. Taking Colon's allegations as true, she was denied services and was unable to purchase the foot cream from HY's website "due to Defendant's failure to build the [website] in a manner that is compatible with screen access programs." [1] ¶ 21, 27.

### 3. Alternative Auxiliary Aids and Services

HY contends that its website falls under the auxiliary aid provision of Title III, [25] at 12, which specifies that while public accommodations must communicate effectively with customers who have vision disabilities, public accommodations can choose amongst various formats and methods of communication. 42 U.S.C. § 12182(b)(2)(A)(iii); 28 C.F.R. § 36.303(c); 28 C.F.R. § Pt. 36, App. C. For instance, if a menu cannot be read by a blind person, the restaurant need not make the menu available in Braille; the restaurant could ensure that waiters are available to explain the menu. 28 C.F.R. § Pt. 36, App. C.

Because the auxiliary aid requirement is flexible, *id.*, HY concludes that it need not modify its website, so long as it provides the information contained therein in some other format, such as by telephone. [25] at 13. HY argues that Colon's claim must be dismissed because she does not allege that she was unable to, or attempted to, purchase the foot cream or access the website content through alternative means offered by HY, such as its customer service hotline or chatbot. [19] at 5–6; [25] at 12–14.

However, the application of the auxiliary aid option is an affirmative defense and not an appropriate basis to dismiss a complaint under Rule 12(b)(6). *See, e.g., Access Now, Inc. v. Blue Apron, LLC*, No. 17-CV-116-JL, 2017 WL 5186354, at *10

(D.N.H. Nov. 8, 2017) ("[T]he question of whether [defendant] provides effective communication for visually-impaired individuals through an alternative means— such as by telephone—amounts to an affirmative defense against the plaintiffs' claim that [defendant's] website violates the ADA."); *Nat'l Fed'n of the Blind v. Target Corp.*, 452 F. Supp. 2d 946, 956 (N.D. Cal. 2006) ("[D]efendant concludes that [it] need not modify its website, so long as it provides the information contained therein in some other format, such as by telephone. However, the flexibility to provide reasonable accommodation is an affirmative defense and not an appropriate basis upon which to dismiss the action.").

"The mere presence of a potential affirmative defense does not render the claim for relief invalid." *Brownmark Films, LLC v. Comedy Partners*, 682 F.3d 687, 690 (7th Cir. 2012). A plaintiff need not anticipate and attempt to plead around affirmative defenses. *Hyson USA, Inc. v. Hyson 2U, Ltd.*, 821 F.3d 935, 939 (7th Cir. 2016). Affirmative defenses frequently "turn on facts not before the court at [the pleading] stage." *Brownmark Films*, 682 F.3d at 690. Therefore, dismissal is appropriate only when the factual allegations in the complaint unambiguously establish all the elements of the defense. *Hyson*, 821 F.3d at 939.

After Colon states a claim—by alleging that the website is not accessible to the blind—the burden then shifts to HY to assert, as an affirmative defense, that it already provides the information on its website in another effective format. While Colon alleges that customers may use HY's website to contact customer services by phone, instant messenger, and email, it is not unambiguously clear that these

auxiliary aids effectively communicate with blind users. *See* [1] ¶ 15. HY's challenge is premature, and I decline to dismiss the action on this basis.[6]

## IV.     Attorney's Fees and Sanctions

HY requests attorneys' fees and costs pursuant to 42 U.S.C. § 12205 and for sanctions against Colon's attorneys under 28 U.S.C. § 1927. [25] at 14. HY has not prevailed, so attorneys' fees and costs are not available to it under § 12205. As for § 1927, HY points out that Colon has filed multiple, similar website accessibility cases against other defendants. *Id.* HY then questions "whether Plaintiff even knows what Plaintiff's counsel has been filing in her name, or if she knows counsel at all." [25] at 15. HY and its counsel also seem to be making derogatory judgments about Colon's life and choices. *See id.* Colon has standing and has stated a claim, so if anyone—on the current record—has come close to the line of improper behavior, it's the defense. The request for attorney's fees and sanctions is denied.

## V.      Conclusion

Defendant's motion to dismiss, [19], is denied. Defendant shall answer the complaint by November 29, 2023. By December 6, 2023, the parties shall file a joint

---

[6] A court may take judicial notice of facts not subject to reasonable dispute without converting a 12(b)(6) motion into a motion for summary judgment. *Tellabs, Inc. v. Makor Issues & Rights, Ltd.,* 551 U.S. 308, 322 (2007); Fed. R. Evid. 201(b). HY asks that I take judicial notice of three facts: (1) the screen-reader program JAWS is incompatible with the iPhone, [19] at 4 n. 1; (2) changes to HY's website that allegedly eliminate Colon's alleged accessibility barriers, [19] at 14; and (3) the HY website in its entirety shows that it operates as an online-only deal broker or platform, [25] at 2. None of these facts are appropriate subjects of judicial notice. *See Gen. Elec. Cap. Corp. v. Lease Resol. Corp.,* 128 F.3d 1074, 1081 (7th Cir. 1997) ("Judicial notice is premised on the concept that certain facts or propositions exist which a court may accept as true without requiring additional proof from the opposing parties.").

status report with a proposed case schedule for fact discovery, amendment of the pleadings, and briefing defendant's motion for summary judgment.

ENTER:

Manish S. Shah
United States District Judge

Date: November 15, 2023