UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| JOCELYN COLON,<br><br>      Plaintiff,<br><br>    v.<br><br>HY SUPPLIES, INC.,<br><br>      Defendant. | No. 22 CV 5915<br><br>Judge Manish S. Shah |

**ORDER**

Defendant's motions for taxation of costs and sanctions, [77], [82], are denied.

**STATEMENT**

Defendant is the prevailing party and entitled to costs under Fed. R. Civ. P. 54(d). In its bill, the only costs defendant seeks are fees for experts and the filing fee for its notice of appeal. [77-1]; [77-2].[1] Although defendant has prevailed in this court, it has not yet prevailed in the court of appeals. The fee for filing a notice of appeal is taxable in the district court for the benefit of the party entitled to costs under Federal Rule of Appellate Procedure 39. Fed. R. App. P. 39(e)(4). The party entitled to costs under Rule 39 depends on the outcome of the appeal—if a judgment is reversed, costs are taxed against the appellee (here, plaintiff); if a judgment is affirmed, costs are taxed against the appellant. Fed. R. App. P. 39(a). Until we know whether the judgment in the district court is affirmed or reversed, we don't know whether the appellate filing fee is taxable under Fed. R. App. 39. While I have jurisdiction to address ancillary issues like a bill of costs while an appeal is pending, *Kusay v. United States*, 62 F.3d 192, 194 (7th Cir. 1995), the request to tax appellee now for the appellant's filing fee is premature and I decline to award it (without prejudice to renewal at the conclusion of the appeal).

Defendant's expert witness fees are not taxable under 28 U.S.C. §§ 1821(b), 1920. *Lane v. Person*, 40 F.4th 813, 815 (7th Cir. 2022). Defendant says another statute, 42 U.S.C. § 12205, authorizes shifting expert witness fees (as a litigation expense) to a losing plaintiff upon a finding that the lawsuit was frivolous,

---

[1] Bracketed numbers refer to entries on the district court docket. Referenced page numbers are taken from the CM/ECF header placed at the top of filings. When a document has numbered paragraphs, I cite to the paragraph, for example [61-2] ¶ 1.

unreasonable, or without foundation, even though not brought in bad faith. [87] at 3. I agree that expert witness fees are a litigation expense that fit within § 12205's list of fees that may be shifted. *See Lovell v. Chandler*, 303 F.3d 1039, 1058 (9th Cir. 2002). But I adhere to my view that plaintiff's case was not frivolous, unreasonable, or pursued in bad faith, so shifting under § 12205 is not appropriate. *See* [73] at 2–3; [68] at 5. Defendant's current round of briefing does not persuade me otherwise. Defendant argues that I made a legal error by effectively requiring a bad-faith finding before shifting fees and that after disclaiming reliance of some of defendant's statements, I failed to fully consider the lack of foundation for plaintiff's claim. *See* [87] at 4–5. I applied the correct test, in which bad faith is an alternative, not required condition for shifting fees. *See* [68] at 4 (citing *Christianburg Garment Co. v. EEOC*, 434 U.S. 412, 422 (1978)). And even without considering defendant's statements about changes or corrections to its website, I still concluded that plaintiff's complaint was not frivolous, unreasonable, or without foundation. [73] at 3 ("The result is no different."). Before filing suit, plaintiff's counsel obtained a consultant's report that suggested some ADA-compliance deficiencies in defendant's website. *See* [61-2] ¶ 6. Questionable or unfavorable facts at the outset of a case do not mean that a plaintiff had unreasonable grounds to bring suit. *Christianburg*, 434 U.S. at 422. Defendant still has not persuaded me that it is entitled to fees (including litigation expenses) under § 12205. Because those are the only costs defendant seeks (other than the appellate filing fee discussed above), the motion for costs is denied.[2]

Defendant also seeks sanctions under Federal Rule of Civil Procedure 11 and 28 U.S.C. § 1927. [82].

The § 1927 sanctions motion is based on filing and prosecuting the complaint without factual foundation. [82] at 12. Defendant says the complaint was without foundation because: a Google Analytics report does not pinpoint a visit to the website from Chicago (as plaintiff alleged in her complaint); the complaint's allegation that plaintiff used the screen-reader application JAWS with her iPhone or alternatively with a Dell laptop was technically impossible; defendant's expert could not reproduce plaintiff's allegations; and defendant's expert was able to successfully navigate the website in compliance with accessibility standards. [82] at 12–14.

The Google Analytics report says a visit to the diabetic foot cream page of defendant's website occurred on October 10, 2022, for 21 seconds from an unspecific

---

[2] Defendant's resort to § 12205 in its reply raises a jurisdictional issue. I have jurisdiction over ancillary issues, but not over issues tied to the merits of the pending appeal. *Kusay*, 62 F.3d at 194. Defendant appealed the order denying fees under § 12205. *See Colon v. HY Supplies, Inc.*, Seventh Circuit Case No. 24-2100, Docket Nos. 1, 2 (citing the district court's denial of fees under 42 U.S.C. § 12205 as within the notice of appeal). To the extent defendant's bill of costs is ancillary, I deny it for the reasons stated in the text. To the extent defendant's bill is tied to the application of 42 U.S.C. § 12205 to the prejudgment facts of the case, it is dismissed for lack of jurisdiction.

location. [52-11] at 2. That does not exclude Chicago and although defendant's expert opines that 21 seconds is too short to meaningfully try to shop on the website, [82-11] at 8, I'm not persuaded. It is conceivable that an experienced ADA tester like plaintiff could do a spot check quickly. That defendant's expert could not reproduce plaintiff's allegations in May 2024 is not persuasive proof that plaintiff and plaintiff's counsel had no foundation to sue in 2022. After defendant pointed out that plaintiff's allegation about using JAWS with her iPhone was likely impossible, she never explained what technology or equipment she did use; she merely alluded to a typographical error. *See* [22] at 9. Plaintiff's failure to adequately explain the method she used is suspicious. But plaintiff's counsel also relied on a consultant's report before filing suit. *See* [61-2] ¶ 6. I conclude that plaintiff's counsel had an adequate foundation to file suit. Defendant's point that plaintiff's ADA consultant did not corroborate plaintiff's experience undermines plaintiff's case, but in evaluating whether plaintiff's counsel was unreasonable or vexatious, I find that counsel was not so reckless. The request for sanctions under § 1927 is denied.[3]

The Rule 11 motion is based on the failure to withdraw an affidavit from plaintiff's counsel, Holly Blackwell. [82] at 7. In the affidavit, Blackwell asserted that she had two phone calls with defense counsel, Shorge Sato, one in December 2023 and the second on January 26, 2024. [61-4] ¶¶ 1–2. Blackwell said that in either the December 2023 call or the January 26, 2024 call, Blackwell relayed an offer to dismiss the case in exchange for a waiver of costs. [61-4] ¶ 4. She said that Sato said that his client would not consider it, and Sato referred to lawyers who work on ADA accessibility cases with derogatory language. [61-4] ¶ 4. In an earlier affidavit, Blackwell said her conversation with Sato occurred on January 17, 2024, and that Sato said he would be sending out discovery. [58-4] ¶¶ 4–5. Defendant issued discovery on January 18, 2024. In Blackwell's corrected affidavit, she said its purpose was "to clarify and correct certain dates that were [stated in the earlier affidavit]." [61-4] ¶ 1. The corrected affidavit omitted the assertion that Sato said he would be sending out discovery. By January 26, 2024, the date Blackwell now says she talked to Sato, he had already issued discovery, so it would not have made sense for Sato to say he would be sending out discovery. Blackwell explains that she meant to clarify facts (remove the assertion that the defense served discovery after the phone call) and correct dates (set the conversation on January 26, not January 17). [86-2] ¶ 11. Blackwell does not explain why she ever claimed that she had a phone call with Sato

---

[3] Alternatively, § 1927 is permissive, not mandatory. *Corley v. Rosewood Care Ctr., Inc. of Peoria*, 388 F.3d 990, 1014 (7th Cir. 2004). A court is not required to impose sanctions if it finds unreasonable and vexatious conduct. *Id.* Here, I would decline to sanction plaintiff's counsel under § 1927. Defendant filed most of the contested motions in the case and defendant chose to prolong the litigation after plaintiff moved to dismiss it. Plaintiff accepted defeat, while defendant wanted to salt the earth. No doubt being sued on a weak, perhaps meritless case is frustrating and costly, and of course vexatious litigation should be deterred. But in my discretionary judgment, the misery visited on the litigants in this case isn't worthy of sanctions.

3

in which he said he would be sending out discovery, or why she said she "reiterated" an offer to walk away when she only spoke to Sato once after he said his client had no money.

Plaintiff filed Blackwell's corrected affidavit on May 12, 2024. [61]. Defendant moved to strike it the next day. [62]. I denied the motion to strike because the lawyers' spat about who said what and when was not relevant to the issue under consideration at the time. [68] at 2. Separately, Sato warned Blackwell that her corrected affidavit was false—in his view—because she did more than just clarify dates and because he disputed her description of their conversation. [82-9] at 5–7. Sato warned Blackwell that he would file a sanctions motion under Rule 11 if plaintiff did not withdraw the corrected affidavit. [82-9] at 1. Plaintiff did not withdraw the affidavit and this motion for sanctions followed.[4]

I agree with Blackwell that her affidavit was an attempt to clarify facts, not just dates.[5] Her statement of purpose was not false. That doesn't explain why Blackwell changed her description of what Sato said by omitting the statement about discovery. It also doesn't explain why she earlier described the January 26 call as a "reiteration" of an offer. [58-4] ¶ 7. Her corrected affidavit better fits the chronology gleaned from emails and phone records, but the substantive revisions to the content of her conversation with Sato casts doubt on the truthfulness of her earlier affidavit, and at a minimum undermines her reliability. Defendant takes strongest issue with Blackwell's statement that Sato said, "his client would not even consider [settling for a waiver of costs]." [61-4] ¶ 4. Defendant rends its garments over such a "public stain on Mr. Sato's reputation." [88] at 3. But a statement that the client "would not even consider it" is not a refusal to communicate the offer to the client. I read it instead to be a statement predicting the client's response. Sato agrees that he told Blackwell

---

[4] Rule 11 does not specify a deadline for a motion for sanctions, and a Rule 11 motion can be considered after judgment, so long as the movant satisfies the procedural requirements. *Divane v. Krull Elec. Co.*, 200 F.3d 1020, 1025 (7th Cir. 1999). Here, defendant gave notice and waited 21 days before filing the motion. The motion is timely.

[5] Typos and mistakes happen. For example, defendant incorrectly labeled its motion as "Plaintiff's Rule 11 and Section 1927 Motion for Sanctions" in the caption—a typo. *See* [82] at 1. Early in the case, defendant sought sanctions against one of plaintiff's attorneys for—among other reasons—not being admitted to practice in this court. [23]. But the court's website disclosed that plaintiff's counsel was a member of this court's general bar, something defendant could have found out with a few clicks of a keyboard. [24]. Defendant had no basis to seek disqualification of counsel. Its lawyer blundered when accusing another lawyer of an ethical violation—a mistake.

4

that he did not expect his client to accept the offer. [82-10] ¶ 4. The affidavit does not accuse Sato of violating the canons of professional responsibility.[6]

Perjury requires materiality, and the integrity of the court was not shaken by Blackwell's affidavit. So, while both Sato and Blackwell continue to dispute the details of the conversation, I continue to find the whole thing irrelevant and immaterial. I have considerable discretion when deciding whether to issue Rule 11 sanctions. *Hinterberger v. City of Indianapolis*, 966 F.3d 523, 529 (7th Cir. 2020). The dispute is not worth haling lawyers into the witness box so I can evaluate their demeanor after being subjected to cross-examination. I conclude that the claimed errors in Blackwell's corrected affidavit were immaterial, and I decline to impose sanctions for the refusal to withdraw the affidavit.

In the section of the motion under the heading for Rule 11, defendant includes a different request for § 1927 sanctions. [82] at 10. Defendant argues that the affidavit asserting that Sato used derogatory language caused it to "have to rebut these claims" in court filings, because it could not accept a victory with a "false calumny foisted upon it." [82] at 10. There was no calumny. Blackwell's affidavit truthfully conveyed Sato's message that his client wasn't likely to accept a walk-away dismissal and saying that Sato used derogatory language was not meant to damage his reputation. The point was to explain how the parties arrived at an impasse over how big a defeat plaintiff would suffer. Defendant was not required to respond with more filings and Blackwell's affidavit was not the reason the litigation continued; that was defendant's choice. Plaintiff's version of her lawyer's interaction with defense counsel was not the basis for her request for sanctions under § 1927; that request was based on defendant's statements in court filings. *See* [61] at 4–13. Plaintiff may have had a bad case, but defendant's scorched-earth response was as much to blame for the contentious and prolonged litigation. The request for sanctions is denied.

ENTER:

Manish S. Shah
United States District Judge

Date: January 27, 2025

---

[6] Defendant also argues that it beggars belief that Sato would be hostile and derogatory in response to an offer from plaintiff to dismiss the lawsuit. [82] at 9. I disagree. After considering the tone of defense filings throughout the history of this case, I conclude that Sato did make an aggressive (or as the defense puts it, "sharp," [88] at 2) comment to Blackwell, one that was dismissive of the offer and plaintiff's case generally. Ultimately, I agree with the defense that "the details of this interaction, which are disputed, are irrelevant." [88] at 2 n.1.